IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CRYSTAL AYON *a/n/f*, A MINOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:19-CV-586-RP |
| | § | |
| AUSTIN INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Austin Independent School District's ("AISD") Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. 9). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

## I. BACKGROUND

Plaintiff Crystal Ayon ("Plaintiff") brings this action on behalf of her minor child, M.R.A., a student in the AISD. The claims in this case arise from the physical, emotional, and psychological harms M.R.A. sustained after school bus driver Cesar Maldonado ("Maldonado") repeatedly sexually assaulted her on the bus ride to school from March 1, 2018 through May 28, 2018. (Am. Compl., Dkt. 8, at 7). Plaintiff pleads the following facts.

Five-year-old M.R.A. rode an AISD school bus, driven by Maldonado, to AISD's Uphaus Early Childhood Center. (*Id.* at 3). AISD employee, Rogelia Lopez ("Lopez") served as the bus monitor for the school buses driven by Maldonado. (*Id.*). According to Plaintiff, AISD "hired Maldonado and Lopez without conducting an adequate background check, and employed Maldonado and Lopez without adequately supervising the performance of their duties and their conduct toward school children." (*Id.*).

Beginning around March 1, 2018, Maldonado began sexually assaulting M.R.A. on the bus ride to school. (*Id.* at 3). Security cameras installed on the school bus recorded the assaults. (*Id.* at 5). In her amended complaint, Plaintiff summarizes the surveillance footage from the sexual assaults that occurred on May 17, 2018, May 21, 2018, and May 23, 2018. (*See id.* at 5–6). These factual allegations track those made in Corporal Alex Phillips's probable cause affidavit. (*Id.* at 5). As alleged by Plaintiff, the surveillance footage captured the following events.

<u>May 17, 2018</u>

On May 17, 2018, Lopez, the school bus monitor, got off the bus when it arrived at Uphaus Early Childhood Center, leaving Maldonado alone on the bus with the minor students, including five-year-old M.R.A. (*Id.*). Once alone with the students, Maldonado closed the door to the bus and walked from the driver's seat to M.R.A.'s seat in the second row. (*Id.*) When Maldonado reached M.R.A.'s seat, she was lying down with her head near the aisle of the bus. (*Id.*). Maldonado reached over M.R.A.s mid/lower body and moved his right arm and shoulder back and forth for approximately thirty seconds. (*Id.*). Maldonado then briefly stopped moving his arm, stood up straight, and hovered over M.R.A. (*Id.*). Then, Maldonado leaned back over M.R.A. and again began moving his right arm and shoulder back and forth over M.R.A.'s mid/lower body, this time continuing for approximately two minutes. (*Id.*). While doing so, he looked over his shoulder 13 times. (*Id.*).

<u>May 21, 2018</u>

Again, Lopez got off the bus, leaving Maldonado alone with the minor children. (*Id.* at 6). Once Lopez left him alone with the students, Maldonado made his way to M.R.A.'s seat, where she sat covered in a blanket. (*Id.*). Maldonado then covered himself in the blanket and pulled M.R.A. toward him with his left arm. (*Id.*). Maldonado's shoulder and arm moved on the left side of M.R.A.'s body. (*Id.*).

Once more, Lopez got off the bus when it arrived at the school, leaving Maldonado alone with M.R.A and the other minor students. (*Id.*). When Maldonado approached M.R.A.'s seat, she was lying down with her head in the aisle. (*Id.*). Maldonado then pretended to sit on M.R.A.'s head and commented to the other students on the bus as he did so. (*Id.*). The footage then shows Maldonado reaching over M.R.A. with his right arm and moving it back and forth over M.R.A.'s mid/lower body. (*Id.*). He then left M.R.A.'s seat for approximately one minute before returning to again move his right arm back and forth over M.R.A.'s mid/lower body. (*Id.*). He left again, but returned to M.R.A.'s seat and resumed the same conduct. (*Id.*). He left for a third time. (*Id.*). He returned to M.R.A.'s seat and again resumed the same conduct. (*Id.*). While standing in front of M.R.A.'s seat, Maldonado looked over his shoulder approximately four times. (*Id.*). When Maldonado left M.R.A.'s seat for the fourth time, he adjusted his genitals from the outside of his shorts. (*Id.*).

According to Plaintiff, one of two things are true: AISD either did not review the surveillance footage capturing the sexual abuse endured by M.R.A. at any time between March 1, 2018 and May 29, 2018, or AISD did review the footage and subsequently took no action. (*Id.* at 5).

In mid-May 2018, M.R.A.'s parents reported M.R.A.'s "out-of-character behavior" to Officer Daryl Seagrave at the AISD Police Department. (*Id.* at 4). Specifically, Plaintiff and Joaquin Rodriguez-Escobar, M.R.A.'s parents, reported that M.R.A. "would become extremely distraught and cry each morning before boarding her school bus" and expressed "fear of using the restroom, to the point that M.R.A. urinated in the family room." (*Id.*). According to Plaintiff, M.R.A. told her that Maldonado touched her. (*Id.*). When asked where Maldonado touched her, M.R.A. said "[her] pussy." (*Id.*).

After learning of the allegations of sexual assault, AISD pulled the surveillance footage from the school buses driven by Maldonado. (*Id.*). During the ensuing investigation, Maldonado admitted that he "had touched M.R.A.'s genitals through her clothing several times," and specifically estimated that he had touched her "vaginal area" 10 times. (*Id.*at 6–7). He further admitted that these sexual assaults followed a similar pattern: Maldonado waited to assault M.R.A. until the school bus arrived at school and Lopez got off the bus. (*Id.* at 7). After conducting an investigation, AISD fired Maldonado. (*Id.* at 3). Plaintiff contends—and AISD does not refute—that AISD continues to employ Lopez. (*Id.* at 8).

This was not the first time an AISD school bus driver sexually abused an AISD student. (*Id.* at 2–3). Three years earlier, in April 2015, two minor witnesses reported to AISD police officers that they had observed AISD school bus driver Leon Young ("Young") inappropriately touching a minor student. (*Id.* at 3). An AISD principal corroborated these observations and told a detective with the AISD police department that he "observed the Victim standing in front of Young and between Young's legs with Young's hand on the Victim's shoulder or back." (*Id.*). When AISD learned of these reports, it investigated and ultimately terminated Young. (*See id.*). Young was criminally prosecuted, convicted, and sentenced to 30 years in prison. (*Id.*).

Plaintiff brings this civil suit against AISD under 42 U.S.C. § 1983 and seeks to hold AISD liable for its failures to (1) "promulgate and implement rules and regulations preventing its employees from sexually abusing students"; (2) "monitor activities on its school buses; and (3) "vet, fire, discipline, train, and supervise its employees." (*Id.* at 8). Plaintiff contends these failures caused the violation of M.R.A.'s constitutional right to bodily autonomy. (*Id.* at 7).

AISD does not dispute that Maldonado violated M.R.A.'s constitutional rights, but moves to dismiss Plaintiff's claims with prejudice because Plaintiff has not sufficiently alleged facts to hold AISD liable for Maldonado's conduct under 42 U.S.C. § 1983. (Mot. Dismiss, Dkt. 25, at 3).

Specifically, AISD argues that Plaintiff's claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff "cannot identify an AISD policy or custom promulgated or ratified by the AISD board of trustees that condones employees sexually assaulting students," has not shown that AISD "approved, adopted, or ratified any actions that Plaintiff claims caused injury to M.R.A.," and has not pleaded facts to show that an AISD policy was the "moving force" behind M.R.A.'s sexual assault. (*Id.* at 5–10). AISD also moves to dismiss Plaintiff's failure-to-train or supervise claims because Plaintiff has not alleged with specificity how a particular AISD training or supervision program was defective or that AISD was deliberately indifferent to the known or obvious consequences of such defects. (*Id.* at 10–12).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III. DISCUSSION

The Court must decide whether Plaintiff's complaint, taking all pleaded facts as true, states a claim for municipal liability against AISD under 42 U.S.C. § 1983. Section 1983 makes liable "'[e]very person' who, under color of state law, violates federal constitutional rights." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting 42 U.S.C. § 1983). Municipal entities, like a school district, qualify as "persons" for § 1983 purposes. *Id.* "But the school district cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* Rather, the school district *itself* must have caused the violation." *Id.* That is, "the unconstitutional conduct must be directly attributable to the [school district] through some sort of official action or imprimatur; isolated unconstitutional actions by [school district] employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

AISD does not dispute that M.R.A. had a constitutional right to bodily autonomy and that Maldonado violated that right when he repeatedly sexually assaulted her on the bus ride to school. But the parties dispute whether AISD is liable for that constitutional violation. Plaintiff's counsel advances a variety of municipal liability theories including: (1) AISD's official policies and customs were defective and caused the violation of M.R.A.'s rights; (2) AISD failed to properly train bus monitor Lopez, "which enabled its employees to act with deliberate indifference" to M.R.A.'s constitutional rights; (3) AISD failed to supervise Lopez and Maldonado by not monitoring, reviewing, or analyzing video surveillance footage, "which enabled its employees to act with

deliberate indifference" to M.R.A.'s constitutional rights," and (4) AISD failed to "conduct[] an adequate background check" before hiring Maldonado and Lopez. (Am. Compl., Dkt. 8, at 8–9). Ultimately though, Plaintiff's counsel fails to allege sufficient facts to proceed with any of these theories. The Court will analyze each of Plaintiff's theories in turn.

## A. Official Policy

To state a § 1983 claim against the school district on the basis of an official policy, the complaint "must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an official policy attributable to the school district's policymakers (3) was the moving force behind it." *Littell*, 894 F.3d at 622–23. Even accepting all of Plaintiff's factual allegations as true, as required at the motion-to-dismiss stage, Plaintiff has not alleged sufficient facts to show that an official AISD policy caused the violation of M.R.A.'s substantive due process right to bodily autonomy.

### i. *Constitutional Violation*

Plaintiff claims M.R.A.'s substantive due process right to bodily autonomy was violated when Maldonado repeatedly sexually assaulted her on the bus ride to school. (Am. Compl., Dkt. 8, at 7). The Fifth Circuit has held that school children have a liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment and that physical abuse by a school employee violates that right. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451–52 (5th Cir. 1994). Indeed, as previously noted, AISD does not dispute that M.R.A.'s constitutional rights were violated. Accordingly, Plaintiff has sufficiently established this element.

The pivotal issue, then, is whether Plaintiff has alleged sufficient facts to show AISD is liable for the violation of M.R.A.'s constitutional rights. Imposing liability on AISD requires Plaintiff to allege facts showing two additional elements: (1) an "official policy" or custom attributable to the

school district's policymakers and (2) that the official policy "was the moving force" behind the violation of M.R.A.'s constitutional rights. *Littell*, 894 F.3d at 622–23.

ii. *Official Policy or Custom*

"An official policy is usually evidenced by 'duly promulgated policy statements, ordinances or regulations,' but a 'custom' may also suffice." *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016) (quoting *Piotrowski*, 237 F.3d at 579). A custom is "a persistent, widespread practice of [school district] officials or employees that . . . is so common and well-settled as to constitute a custom that fairly represents . . . policy." *Id.* In other words, a custom "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). To plausibly plead a practice "so persistent and widespread as to practically have the force of law, [a plaintiff] must do more than describe the incident that gave rise to [her] injury." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020). That is, Plaintiff cannot satisfy the *Twombly* or *Iqbal* pleading standards on her official policy-or-custom allegation if the only facts she alleges with specificity relate to the events that gave rise to this action. *See id.*

Plaintiff alleges that, "despite awareness of their students' vulnerability," AISD "persistently failed to promulgate and implement adequate policies to prevent its employees from sexually abusing students, such as by monitoring bus surveillance footage and training bus monitors, in a meaningful way." (Reply, Dkt. 10, at 3). Plaintiff also contends that AISD "policies, practices, procedures, and customs . . . in failing to monitor, review, and/or analyze video surveillance footage

[and] inadequately training and supervising bus monitor Lopez enabled its employees to act with deliberate indifference to the constitutional rights of its students."(Am. Compl., Dkt. 8, at 8).

Here, Plaintiff has pleaded no facts that suggest AISD maintained an official policy that was permissive of sexual abuse.[1] Instead, Plaintiff merely concludes that "[t]he policies, practices, procedures, and customs of Defendant AISD . . . proximately caused the deprivation of M.R.A.'s recognized substantive due process right of bodily autonomy." (*Id.* at 8–9). To survive a motion to dismiss, Plaintiff must do more than recite the elements of a municipal liability claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff must describe the official policy and its relationship to the underlying violation with specific facts. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."); *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1032 (W.D. Tex. 2013) ("The description of the policy or custom and its relationship to the underlying constitutional violation must be more than conclusory."). Plaintiff's assertion that AISD's "policies, practices, procedures, and customs" enabled employees to violate M.R.A.'s constitutional rights is insufficient because it is conclusory: she does not identify a policy, let alone link that policy to M.R.A.'s constitutional violation. (Am. Compl., Dkt. 8, at 8–9).

Plaintiff's counsel also advances a theory of municipal liability on the basis of a pattern of unconstitutional conduct. (*Id.* at 2). In support, Plaintiff points to another sexual assault of a minor on an AISD school bus. (*Id.*). Specifically, Plaintiff alleges bus driver Young repeatedly sexually

---

[1] At times, Plaintiff's complaint appears to lump three theories of municipal liability together. To the extent the "official municipal policy" on which Plaintiff attempts to hang *Monell* liability is AISD's alleged policy of providing inadequate training or supervision, Plaintiff has also failed to plead the necessary facts to support failure-to-train or failure-to-supervise claims. *See infra* Part III.B.

assaulted a 6-year-old child from August 25, 2014 through April 17, 2015 on the bus ride to school. (*Id.*). The legal question the Court must resolve, then, is whether this additional incident of sexual assault is sufficient to establish a pattern of sexual abuse that can be said to represent official AISD policy. *See Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 850 (5th Cir. 2009).

"A pattern is tantamount to official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* Where a plaintiff relies on prior incidents to prove a pattern, "they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the [school district] that the objectionable conduct is the expected, accepted practice of [school district] employees." *Id.*; *Pagan-Negron*, 974 F.Supp. 2d at 1032 ("Where the liability is based on informal custom, the practice must be "so widespread as to have the force of law"). The pattern of abuses "must transcend the error made in a single case." *Peterson*, 588 F.3d at 851. A pattern requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *Id.* This is a high bar. *See id.* (holding that 27 incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct."); *see also Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding that 11 incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry).

Though the Court acknowledges that one sexual assault is one too many, Plaintiff's factual allegations about one prior incident are ultimately insufficient under Fifth Circuit law to show that the sexual assault of minors on school buses is "the expected, accepted practice of [AISD] employees." *Peterson*, 588 F.3d at 850. When AISD learned of the allegations against Young, it investigated those allegations and terminated him. (Am. Compl., Dkt. 8, at 3). AISD did the same

when it learned of the allegations against Maldonado.[2] In investigating and terminating Young and

Maldonado, AISD indicated that the sexual abuse of minors is *not* the "expected, accepted practice

of [AISD] employees." *Peterson*, 588 F.3d at 850. Accordingly, Plaintiff has not sufficiently pleaded

that AISD maintained an official policy or custom of condoning sexual abuse. And because Plaintiff

has not pleaded sufficient facts to show an official policy or custom of condoning sexual abuse, she

cannot show that such a policy was the "moving force" behind the violation of M.R.A.'s

constitutional rights. Thus, the Court will not address that remaining element. *Littell*, 894 F.3d at

622–623.

## B. Failure to Train

Pursuing a separate theory of municipal liability, Plaintiff contends that AISD failed to

adequately train its bus monitors and that this failure caused the violation of M.R.A.'s constitutional

rights. (Am. Compl., Dkt. 8, at 8–9). Specifically, Plaintiff contends that AISD failed to adequately

train bus monitor Lopez, "enabl[ing] its employees to act with deliberate indifference to the

constitutional rights of its students, which proximately caused the deprivation of M.R.A.'s

recognized substantive due process right of bodily autonomy." (*Id.* at 9).

To avoid dismissal of a failure-to-train claim, a plaintiff must plead sufficient facts to show:

"(1) that the municipality's training procedures were inadequate, (2) that the municipality was

deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy

directly caused the violations in question." *Zarnow*, 614 F.3d at 170. A school district can be held

---

[2] Plaintiff avers that "[u]pon information and belief, Lopez remains in the employ of Defendant AISD as of the date of this filing." (Am. Compl., Dkt. 8, at 3). Even if Plaintiff could link Lopez to M.R.A.'s assault with more than the fact that Lopez exited the bus when it arrived at school, Plaintiff must do more than "describe the incident that gave rise to [her] injury" to establish municipal liability on the basis of an official policy or custom. *See Ratliff*, 948 F.3d at 285. The practice of retaining bus monitors involved in sexual misconduct must be "so persistent and widespread as to practically have the force of law," which requires Plaintiff to do more than allege that AISD retained the bus monitor in this case. *Id.*

liable under § 1983 for failing to train its employees only if that failure "reflects deliberate indifference to the constitutional rights of its [students]." *City of Canton v. Harris*, 489 U.S. 378, 386–92 (1989); *Peterson*, 588 F.3d at 851 ("The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights."). It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training. *Canton*, 489 U.S. at 391.

Again, Plaintiff's complaint does not support her conclusion that AISD failed to train its bus monitors with factual allegations. As a preliminary matter, Plaintiff's counsel misunderstands the elements of a failure-to-train claim under § 1983. To state an actionable failure-to train-claim against AISD, Plaintiff must plead facts to show AISD in particular was deliberately indifferent in adopting inadequate training procedures. *See Zarnow*, 614 F.3d at 170. Specifically, Plaintiff must show that the need for more or different training was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [AISD] can reasonably be said to have been deliberately indifferent to the need." *Littell*, 894 F.3d at 624. Instead, Plaintiff alleges that in failing to properly train bus monitor Lopez, AISD "enabled its *employees* to act with deliberate indifference to the constitutional rights of its students." (Am. Compl., Dkt. 8, at 9). This is not only a conclusory allegation insufficient to state a claim under Rule 12(b)(6), but it also ascribes deliberate indifference to the wrong actor. *See Zarnow*, 614 F.3d at 170 (noting that a failure-to-train claim requires a showing that the municipality—here, AISD—was deliberately indifferent in adopting its training policy). Plaintiff must plead facts to show *AISD* was deliberately indifferent to the known or obvious need for more or different training to successfully allege a failure-to-train claim. *See id.*

Even construing Plaintiff's failure-to-train claim as one alleging deliberate indifference on AISD's part, Plaintiff has done little more to advance her claim than levy the conclusory allegation that AISD inadequately trained Lopez. (*See* Am. Compl., Dkt. 8, at 8–9). Plaintiff pleads no facts

concerning AISD's training procedures, Lopez's qualifications, or the inadequacies of AISD's bus monitor training. *See Zarnow*, 614 F.3d at 170. The only fact Plaintiff martials in support of her failure-to-train claim is that Lopez exited the bus during each of the recorded assaults. (Am. Compl., Dkt. 8, at 5–6). But to state a claim based on AISD's inadequate training of its bus monitors, plaintiff "must allege with specificity how a particular training program is defective." *Zarnow*, 614 F.3d at 170. Plaintiff does not allege any facts about AISD's bus monitor training procedures, making it impossible for the Court to determine whether Lopez's absence at the time of M.R.A.'s assault was a decision concordant with Lopez's training, a decision Lopez made because AISD provided her with *no* training, or a decision Lopez made at odds with her training.[3] Without facts pertaining to AISD's training procedures, Plaintiff cannot show AISD's training procedures were inadequate, the threshold showing on a failure-to-train claim. *See id.* at 171.

Plaintiff's failure-to-train claim contains another fatal flaw: Plaintiff pleads no facts to show AISD's deliberate indifference. As the Fifth Circuit has explained, the Supreme Court's decision in *Canton* "envisioned two means of proving deliberate indifference." *Littell*, 894 F.3d at 624. First, there are situations when municipal employees violate constitutional rights "so often" that the factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the . . . policymakers." *Id.* This is known as the "proof-by-pattern method," and is

---

[3] In her Reply, Plaintiff contends that "[i]t was regular practice for the bus monitor to exit the bus as soon as the bus arrived at the school, while children were still present, greatly decreasing the chance that the monitor could prevent any assault or otherwise observe inappropriate conduct." (Reply, Dkt. 10, at 4). Still though, Plaintiff fails to connect this "regular practice" to an official AISD training procedure. (*Id.*). Plaintiff must allege an "official municipal policy" of inadequately or completely failing to train employees that "amounts to deliberate indifference" to state a claim for municipal liability under § 1983. *Littell*, 894 F.3d at 624 (quoting *Canton*, 489 U.S. at 386–92).

"ordinarily necessary" to prove deliberate indifference. *Id.* (citing *Canton*, 489 U.S. at 390 n.10; *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409, 117 (1997)).

Absent proof of a pattern of violations, a plaintiff can still show deliberate indifference if she pleads facts that show the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id.* "Such an inference is possible in only very narrow circumstances: [t]he municipal entity must have fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* at 624–25. For example, if a city policymaker "opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the city acted with the requisite deliberate indifference." *Id.* at 625.

Plaintiff has not pleaded facts to show that AISD bus drivers violated constitutional rights "so often" such that the Court might infer from the pattern of violations a "plainly obvious" need for further bus monitor training. *Id.* at 624 (quoting *Canton*, 489 U.S. at 390). Again, the Court notes that Plaintiff has pleaded no facts pertaining to AISD's training procedures. The Court cannot infer that the need for more bus monitor training was "plainly obvious" when Plaintiff provides no information about what training bus monitors actually receive. *Id.* Moreover, Plaintiff alleges one other case of sexual assault of a minor by AISD school bus driver Young. As discussed previously, one prior incident of sexual assault—while indisputably egregious—is not enough to establish a pattern under current Fifth Circuit law. *See Peterson*, 588 F.3d at 851.

Plaintiff has also not shown that the risk of sexual assault was or should have been a "highly predictable consequence" of the school district's failure to adequately train its bus monitors. *See Littell*, 894 F.3d at 624 (describing the second approach to proving deliberate indifference absent a proof of pattern as requiring a showing that "the risk of constitutional violations was or should have

been an obvious or highly predictable consequence of the alleged training inadequacy"). Plaintiff has not alleged a complete failure-to-train claim, which the Fifth Circuit has found to be actionable in the Fourth Amendment context when the school district makes the "conscious choice to take *no* affirmative steps to instruct *any* of its employees." (*See* Am. Compl., Dkt. 8, at 9 (alleging that AISD inadequately trained Lopez, not that it provided no training at all); *cf. Littell*, 894 F.3d at 624 (recognizing a complete failure-to-train claim when Plaintiffs alleged the school district had a policy of providing no training whatsoever regarding its employees' legal duties not to conduct unreasonable searches and finding that there was an obvious need for some form of training). Without facts pertaining to the particular inadequacies of Lopez's training, the Court may not infer that the violation of students' substantive due process rights was the "highly predictable consequence" of those inadequacies as it might in circumstances where the facts indicate the school district provided no training at all, as in *Littell*, 894 F.3d at 624. And even if AISD had provided bus

monitors with no training, Plaintiff has not shown how the violation of students' substantive due

process rights would be a highly predictable consequence of failing to train bus monitors.[4]

Because Plaintiff has failed to plead sufficient facts to establish the first two elements of the

"failure to train" test, the Court need not address the third causation element. Plaintiff's failure-to-

train claim cannot survive AISD's motion to dismiss.

## C. Failure to Monitor/Supervise

Plaintiff also alleges that AISD was deliberately indifferent to the need to supervise its bus

drivers adequately. (Am. Compl., Dkt. 8, at 7). As an example of AISD's failure to supervise,

Plaintiff alleges that AISD either failed to "monitor, review, and/or analyze video surveillance

footage" on Maldonado's bus from March 1, 2018, to May 29, 2018, or that AISD reviewed the

footage during this period and subsequently took no action to protect M.R.A. (*Id.* at 5, 8).

Again, though, for AISD to be liable for failure to supervise, it must have been "obvious that

the highly predictable consequence" of not supervising its employees was that students' substantive

due process rights would be violated. *Peterson*, 588 F.3d at 850 (noting that for the City to be liable

for failure to supervise, it must have been obvious that "the highly predictable consequence of not

---

[4] This case differs in important ways from *Littell*, in which the Fifth Circuit recognized that the plaintiffs had successfully alleged deliberate indifference without a pattern of constitutional violations based on a complete failure to train. In *Littell*, the plaintiffs alleged the school district provided no training to its employees on Fourth Amendment law and pleaded sufficient facts to show that there was an obvious need for *some* training on the constitutional bounds of student searches because there was no reason to assume school district employees come "pre-equipped with legal knowledge" on the constitutional constraints placed on student searches. 894 F.3d at 626. And because employees were routinely placed in situations involving student searches, there was an obvious need for some training. *Id.* Accordingly, the school district's decision to provide no training warranted the inference that it acted with deliberate indifference to that need. *Id.* at 627. Here, the school district can arguably rely on employees coming pre-equipped with at least some understanding of what constitutes sexual abuse of a minor. Moreover, unlike in *Littell*, where plaintiffs showed that the school district "knew or should have known" that school employees "would be placed in situations requiring knowledge of Fourth Amendment search law," the idea that AISD knew or should have known that bus monitors would be placed in situations requiring knowledge of substantive due process law is far less persuasive. Thus, even if Plaintiff had alleged AISD provided no training to either Lopez or Maldonado, this case would still not resemble those rare instances when the Fifth Circuit has found deliberate indifference absent a pattern of constitutional violations. *See id.* at 627–28.

supervising its officers was that they would apply force in such a way that the Fourth Amendment rights of citizens were at risk."). As an initial matter, AISD did demonstrate some level of employee supervision by investigating Maldonado's conduct as soon as it learned of the allegations against him and ultimately terminating him. (Am. Compl., Dkt. 8, at 2). Moreover, even taking Plaintiff's allegation that AISD failed to monitor bus surveillance footage relevant to this case as true, Plaintiff has pleaded neither facts that attribute this failure to an AISD policy nor facts that enable the Court to infer that sexual abuse was the highly predictable consequence of such a policy. *See Peterson*, 588 F.3d at 850. Accordingly, Plaintiff's failure-to-supervise claim fails for the same reason as her failure-to-train claim: she has not pleaded facts to show AISD was deliberately indifferent to the need to supervise its employees adequately.

### D. Failure to Vet

Plaintiff also seeks to hold AISD liable for M.R.A.'s assault under § 1983 for its alleged "failure to vet" Maldonado and Lopez. (Am. Compl., Dkt. 8, at 7). But Plaintiff fails to advance this claim with any factual support beyond the conclusory allegation that AISD "hired Maldonado and Lopez without conducting an adequate background check." (*Id.*). Plaintiff does not plead facts to show that not conducting adequate background checks is an AISD official policy or widespread custom. Plaintiff's only fact with respect to background checks relates to Maldonado and Lopez. To plausibly plead that failing to conduct background checks is a practice "so persistent and widespread as to practically have the force of law, [Plaintiff] must do more than describe the incident that gave rise to [her] injury." *Ratliff*, 948 F.3d at 285. Accordingly, Plaintiff has failed to plead municipal liability on this theory as well.

### IV. CONCLUSION

Ultimately, Plaintiff has pleaded sufficient facts to establish that Maldonado violated M.R.A.'s constitutional rights when he sexually assaulted her. (*See* Am. Compl., Dkt. 8, at 3–6). But

Plaintiff did not sue Maldonado, the person who violated M.R.A.'s right to bodily integrity. Plaintiff has also not alleged state-law negligence claims where, unlike municipal liability claims brought under § 1983, she might rely on a *respondeat superior* theory. *See Littell*, 894 F.3d at 622 (noting that a school district cannot be held liable under § 1983 on a *respondeat superior* theory). Instead, Plaintiff seeks to impose § 1983 liability on AISD for the misconduct of its employee and, for the reasons discussed, has failed to plead sufficient facts to satisfy the demanding standards required by *Monell* and its progeny. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

For the reasons given above, **IT IS ORDERED** that AISD's Motion to Dismiss Plaintiff's Amended Complaint, (Dkt. 9), is **GRANTED**. Plaintiff's claims against AISD are **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on March 31, 2020.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE